IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUSAN G. FARBER, AS EXECUTRIX OF THE ESTATE OF ZOLA H. GOLD AND PERSONS ENTITLED TO ASSETS OF THE ESTATE OF ZOLA H. GOLD; RISE INSURANCE AGENCY, INC.; and STEFFI B. GOLD, <br><br> Plaintiffs, <br><br> v. <br><br> LINCOLN NATIONAL LIFE INSURANCE COMPANY, LINCOLN FINANCIAL ADVISORS CORPORATION, GERALD SILVER, and CAPITAL COORDINATION INSURANCE <br><br> Defendants. | Case No.: <br><br> **JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiffs, Susan G. Farber, as Executrix of the Estate of Zola H. Gold ("Decedent" or "Gold") and Persons Entitled to Assets of the Estate (the "Estate"); Rise Insurance Agency, Inc.; and Steffi B. Gold (collectively, "Plaintiffs"), by and through their counsel, Clark Hill, PLC, file the within Complaint and state as follows:

### INTRODUCTION

1. This civil action asserts claims for breach of contract, declaratory relief, an accounting and other claims and relief related to the improper and wrongful refusal of Defendants to pay to Plaintiffs commissions earned, due and payable upon and after the death of Gold. This action also seeks damages resulting from the Defendants' intentional interference with the Plaintiffs' contractual rights.

204733086

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff, Susan G. Farber ("Farber"), Executrix of the Estate ("Executrix"), is Decedent's daughter, an adult individual and a citizen of the Commonwealth of Pennsylvania, having an address of 114 Eton Drive, Pittsburgh, PA 15215. The Estate is being probated in the Commonwealth of Pennsylvania. The Estate, therefore, a citizen of the Commonwealth of Pennsylvania.

3. Plaintiff, Steffi B. Gold ("Wife"), is an adult individual having an address of 146 N. Bellefield Ave., Pittsburgh, Pennsylvania 15213, and is a citizen of the Commonwealth of Pennsylvania and Decedent's surviving spouse.

4. Plaintiff, Rise Insurance Agency, Inc. ("Rise"), is a Pennsylvania corporation established in 1969 and has its principal place of business at 2839 Liberty Avenue, Suite 1044, Pittsburgh, Pennsylvania 15222.

5. Defendant, Lincoln National Life Insurance Company, is an Indiana corporation with a principal place of business at 1300 South Clinton Street, Fort Wayne, Indiana 46802.

6. Defendant, Lincoln Financial Advisors Corporation, is an Indiana corporation with a principal place of business at 1300 South Clinton Street, Fort Wayne, Indiana 46802. Lincoln National Life Insurance Company and Lincoln Financial Advisors Corporation shall hereinafter be referred to collectively as "Lincoln".

7. Defendant, Gerald Silver ("Silver"), is an adult individual and resident of the State of Florida, with an address of 2213 Fisher Island Drive, Miami Beach, Florida 33109-0062.

8. Defendant, Capital Coordination Insurance ("Capital"), is a Florida corporation with a principal place of business at 9150 S.W. 87th Avenue, Suite A-100, Miami, Florida 33176.

9. The amount in controversy is greater than $75,000.00, exclusive of interest and costs, and the parties possess diverse citizenship for purposes of 28 U.S.C. § 1332. Therefore, this Court has jurisdiction over this action pursuant to 28 U.S.C. §1332.

10. Venue is proper in this Court pursuant to 28 U.S.C. §1391 in that a substantial part of the events or omissions giving rise to the claims in this Complaint occurred in this district, and the subject matter of this Complaint arises out of the parties' transaction of business in this district.

## BACKGROUND FACTS

### A. The Estate

11. Decedent died on August 10, 2015. At all times relevant, Gold was a resident of the Commonwealth of Pennsylvania.

12. Plaintiff Wife was married to Gold at the time of his death, is Gold's surviving spouse, and is the beneficiary of the Estate pursuant to Last Will and Testament dated August 8, 2008 of Decedent.

13. Executrix has authority to act on all matters relating to the Estate by and through issued letters testamentary. Accordingly, Executrix is authorized to pursue claims in this action on behalf of the Estate.

### B. Broker Relationships with Lincoln

14. At all times relevant, Gold was an owner and President of Rise. At all times relevant, Rise was engaged in the business of insurance and annuity sales and related sales and services.

15. Upon Decedent's passing, some of the shares of Rise became the property of the Estate and are currently being held by the Estate. Those shares in Rise, therefore, are an asset of the Estate.

16. Upon information and belief, Silver was, at all times relevant, the owner of Defendant Capital, which was also engaged in the business of insurance and annuity sales and related sales and services.

17. Commencing in approximately 1999, Rise was authorized to act as a Corporate Broker and/or Registered Representative for Lincoln and for Unum Life Insurance Company of America ("Unum"), among others, in order to solicit applications for life insurance, annuities and other insurance and to solicit subscriptions for non-insurance product securities offered by or through Lincoln, Unum and otherwise (the "Products").

18. The relationship between Rise and Lincoln was documented by, *inter alia*, a Broker Contract. *See* Broker Contract effective January 1, 2000 by and between Rise and Lincoln, attached as Exhibit A.

19. At times relevant, Gold, individually, also was authorized to act as a Broker and/or Registered Representative for Lincoln, Unum and others, in order to solicit applications and subscriptions for the Products.

20. The relationship between Gold and Lincoln was documented by, *inter alia*, a Broker Contract effective March 31, 1999, attached as Exhibit B.

21. The above-referenced Broker Contracts with Lincoln provide, in pertinent part:

> "If the Broker dies at a time when monies are payable under this contract, Lincoln National will pay such monies, as they accrue, to the surviving spouse of the Broker, and, at the death of said spouse, to the estate of said spouse. If the Broker dies leaving no surviving spouse, any monies payable under this contract shall be payable to the estate of the Broker."

*See* Ex. A, section 8, Ex. B, section 9.

22. Upon information and belief, Silver and/or Capital also were authorized to act as a Broker and/or Registered Representative for Lincoln and Unum, individually and/or in a corporate capacity, respectively, in order to solicit applications and subscriptions for the Products.

C.  **The Agreement to Split Commissions**

23. Gold and Silver were long-time business associates in the insurance industry.

24. Since as far back as 1977, Silver/Capital and Gold/Rise worked together on the sale of insurance and annuity products. They first did so while working with Unum and where, initially, Gold/Rise developed, controlled and held the majority of their shared business existing at Unum, with Silver/Capital holding less than a ten (10) percent interest in the same.

25. Over time, as the parties' relationship developed and changed, Gold/Rise gave Silver/Capital a greater percentage of interest in the business existing at Unum. Commencing in around 1992, Gold/Rise and Silver/Capital began to share, 50/50, in certain commissions earned while at Unum.

26. In or after 1996, Lincoln acquired the tax sheltered annuity business from Unum. As a result of this acquisition by Lincoln, Lincoln extended to Gold/Rise and Silver/Capital a unique arrangement – on information and belief, not extended to any other brokers – which allowed Gold/Rise and Silver/Capital to continue to work together, like they had with Unum, on the sales of Products for Lincoln and the sharing of certain commissions with respect thereto.

27. Accordingly, after Lincoln's acquisition of the Unum tax sheltered annuity business, and like they had for years in the past, Gold/Rise and Silver/Capital agreed to share equally in certain commissions earned by them during Gold and Silver's lifetimes from the sales of the Products for Lincoln.

28. Specifically, Gold/Rise and Silver/Capital agreed that they would work together on their sales of Products for Lincoln, Unum and/or others, such that Gold and Silver, by and through their respective companies, Rise and Capital, would (i) equally split the proceeds (i.e., commissions) of their sales of certain Products to/for their shared clients both during their respective lifetimes and after death; (ii) during the lifetime of Gold, Gold/Rise would pay a certain portion of Silver/Capital's expenses attributable to their shared book of business; (iii) Silver/Capital alone would pay the remainder of Silver/Capital's expenses; (iv) the commissions payable from any sales on certain Products made to shared clients during the lifetime of Gold or Silver and after would be payable and shared 50/50 after the death of Gold or Silver; and (v) Gold/Rise and Silver/Capital would not divert their shared business as aforesaid to third parties during or after their lifetimes to the detriment of the other party (the "Agreement").

29. Pursuant to the Agreement, Gold and Silver, by and through their respective companies, Rise and Capital, pursued sales of the Products for Lincoln for nearly twenty (20) years prior to Decedent's death.

30. Further evidencing their working arrangement, Silver took out life insurance on Gold's life and Gold took out life insurance on Silver's life. To this date, the insurance premiums on the life insurance taken out on Silver's life continue to be paid.

31. At all times relevant hereto, Lincoln was aware of the Agreement and its terms.

32. At all times relevant, both Gold/Rise and Silver/Capital regularly solicited business, conducted business and otherwise transacted business in this district pursuant to the Agreement. This included, *inter alia*, regular communications via telephone and in writing in this district, as well as travel to Pennsylvania by Silver, individually and on behalf of Capital, to

meet with Gold/Rise and shared clients and shared prospective clients pursuant to and for purposes of the Agreement.

33. During the nearly twenty (20) year time-period prior to Decedent's death while Silver/Capital and Gold/Rise worked together as brokers for Lincoln, Unum and others, Gold/Rise and Silver/Capital shared commissions in accordance with the Agreement.

34. At all times relevant prior to Gold's death, Lincoln had knowledge of, abided by, and agreed to act pursuant to, and in accordance with, the Agreement.

35. Lincoln and Unum paid proceeds from the sales of Products associated with the Agreement in accordance with the Agreement, paying Gold/Rise 50 percent of such commissions and Silver/Capital 50 percent of such commissions. In instances for insurance policies written with insurance companies other than Lincoln and Unum, Gold/Rise and Silver/Capital were also required to split commissions from shared clients 50/50 in accordance with the Agreement.

D. **The Improper and Wrongful Failure to Pay Commissions Upon Gold's Death**

36. In 2015, prior to Decedent's death, Farber (who also worked for Rise) and Decedent contacted Lincoln regarding a transfer or sale of the future commissions owed or payable to Gold/Rise by Lincoln.

37. Farber and Decedent contacted Lincoln in this regard due to the declining health of Gold.

38. Farber and Gold discussed with Lincoln whether Gold/Rise could sell his/its book of business and Lincoln did not raise any issue or objection to this concept, thereby acquiescing in the understanding that the book was owned by Gold/Rise. Indeed, Lincoln expressly stated

-8-

that if Gold/Rise decided to sell, Lincoln wanted to be involved, work closely with Gold/Rise to find a buyer and/or would consider buying the book itself.

39. Prior to Gold's death, Gold and Farber also had inquired as to whether a transfer of certain of Gold's book of business (related to variable annuities) could be accomplished directly to Farber.

40. Lincoln responded that, if Farber became securities registered and met certain other requirements, Lincoln could transfer those Products (related to variable annuities) from Gold directly to Farber.

41. Unbeknownst to Gold, Rise or Farber, however, and upon information and belief, Silver, individually and on Capital's behalf, had communications with Lincoln in an effort to have Lincoln transfer to Silver/Capital the commissions owed and/or payable to, and/or on behalf of, Gold/Rise after Gold's death.

42. Upon knowledge and belief, Silver promised Lincoln that if Lincoln paid to Silver/Capital all of the future commissions owed or payable pursuant to the Agreement, (specifically including those commissions owed and payable solely to and/or on behalf of Gold/Rise), Silver would "make it right" by Gold.

43. As a result of Silver/Capital's intentional efforts and improper interference with Gold/Rise's contracts with Lincoln, Lincoln ultimately, improperly and wrongly, agreed to pay to Silver/Capital the full amount of all commissions owed pursuant to the Agreement (specifically including the commissions which were owed to, or on behalf of, Gold/Rise after Gold's death, pursuant to the Agreement).

44. In or around March 2016 and thereafter, Lincoln further advised the Executrix that it would not transfer any commissions or pay any future commissions owed as a result of

being earned by Gold/Rise pursuant to the Broker Contracts (see Exhibits A and B), the Agreement or otherwise to the Estate, Wife or Farber.

45. Lincoln further wrongly advised the Executrix that all commissions earned during the life of Gold ceased and terminated upon Gold's death.

46. Lincoln's position was contrary to and in violation of not only the Agreement, but the vested rights and interests of Gold/Rise, as well as Wife, pursuant to the parties' Broker Contracts.

47. Since the time of Decedent's death, Lincoln has wrongly refused to pay and has not paid any commissions earned by Gold/Rise to Rise, the Estate and/or Wife. This includes commissions earned, owed and payable pursuant to the Agreement, as well as other commissions in which Gold/Rise (and Wife) had or has a vested interest through and with Lincoln pursuant to the parties' Broker Contracts.

48. Since the time of Decedent's death, Lincoln has wrongly paid such commissions to Silver/Capital and/or improperly retained such commissions itself.

### COUNT I – BREACH OF CONTRACT
### ESTATE AND RISE v. SILVER AND CAPITAL

49. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

50. A valid contract existed between Gold/Rise and Silver/Capital in the form of the Agreement, as set forth above.

51. The Agreement is enforceable by the Estate and the Estate has standing and full legal rights to pursue a claim for breach of the Agreement against Silver and Capital.

52. Gold/Rise performed all of his/its obligations under the Agreement.

53. In material breach of Agreement, Silver/Capital has failed to pay the Estate for the commissions earned by Gold during his life and/or otherwise payable after Decedent's death to the Estate pursuant to the Agreement.

54. The Estate believes that far in excess of $75,000 (exclusive of interest and costs) is currently owed and/or payable to the Estate pursuant to the Agreement, plus money damages accruing in the future.

55. Silver's/Capital's failure to pay to the Estate the commissions earned by Gold/Rise during Gold's life, and/or otherwise payable after Decedent's death, to the Estate pursuant to and in accordance with the Agreement is a failure to perform the Agreement on the part of Silver/Capital.

56. As a result of Silver/Capital's material breach of its duties and obligations under the Agreement, the Estate has sustained past and ongoing damages.

WHEREFORE, the Estate requests that the Court enter judgment in its favor and against Defendants Silver and Capital for past and ongoing damages, plus interest and costs, order Silver/Capital to abide by the Agreement going forward (or otherwise pay their obligations thereunder), and award all other relief that the Court may deem to be appropriate.

## COUNT II – DECLARATORY RELIEF
### ESTATE AND RISE v. SILVER AND CAPITAL

57. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

58. As set forth fully above, Gold/Rise and Silver/Capital entered into a valid and legally binding contract by entering into the Agreement.

59. As set forth fully above, Defendants Silver and Capital are in material default and breach of the Agreement.

60. The Estate and Rise have full legal standing and rights to pursue declaratory relief on behalf of Gold/Rise and against Defendants Silver and Capital in respect of Silver's and Capital's material breaches and defaults of the Agreement and otherwise.

61. As a result of such material breaches and defaults by Defendants Silver and Capital, the Estate and Rise have been denied payments of commissions to which the Estate and/or Rise are entitled, and Defendants Silver and Capital have improperly declared and/or taken the position that no future payments are owed or payable to the Estate and/or Rise pursuant to the Agreement or otherwise.

62. The Estate and Rise, therefore, seek declaratory relief in the form of an order of Court declaring that the Estate and/or Rise is entitled to payment of any future commissions earned by Gold/Rise during Gold's life, and/or otherwise payable after Decedent's death, including commissions earned, owed and payable pursuant to the Agreement.

63. In the absence of declaratory relief, the Estate and/or Rise will be irreparably harmed. The interests of justice and equity further mandate that declaratory relief be awarded.

64. An actual and justifiable controversy exists between the Estate and/or Rise, on the one hand, and Defendants Silver and Capital, on the other hand, over the Agreement and the contractual rights to commissions.

WHEREFORE, the Estate and Rise respectfully request that this Court enter judgment in their favor and against Defendants Silver and Capital and enter declaratory relief that the Estate and/or Rise are entitled to payment of any future commissions earned by Gold/Rise during Gold's life, and/or otherwise payable after Decedent's death, including commissions earned, owed and payable pursuant to the Agreement, all at Defendants Silver and Capital's cost.

## COUNT III – BREACH OF CONTRACT
## RISE, ESTATE AND WIFE v. LINCOLN

65. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

66. Alternatively, to the extent that Lincoln denies that it has any contractual or other obligation to pay Rise, the Estate and/or Wife certain commissions pursuant to the Agreement or otherwise, as set forth above, Rise, the Estate and Wife have rights and standing to seek payment of these and other commissions independently.

67. Specifically, the Broker Contracts with Lincoln provide, in pertinent part:

> "If the Broker dies at a time when monies are payable under this contract, Lincoln National will pay such monies, as they accrue, to the surviving spouse of the Broker, and, at the death of said spouse, to the estate of said spouse. If the Broker dies leaving no surviving spouse, any monies payable under this contract shall be payable to the estate of the Broker."

*See* Ex. A, section 8, Ex. B, section 9.

68. Upon Decedent's death in August 2015, pursuant to the plain terms of the above-referenced Broker Contracts, all monies due and payable under the Broker Contracts with Lincoln, including future commissions due and payable to Gold and/or to Rise and/or in which Gold and/or Rise had or has a vested interest, became and are payable to Wife, the surviving spouse of Gold.

69. Wife, the surviving spouse of Gold, is entitled to payment of such commissions by and from Lincoln under the Broker Contracts, including future commissions due and payable by Lincoln with respect to commissions earned by Gold and/or Rise during Gold's lifetime and/or for which Gold and/or Rise had or has a vested interest.

70. Lincoln is in material breach of its duties under the Broker Contracts because Lincoln has failed to make any such payments to Wife.

-12-

71. Lincoln has wrongly declared that all rights to any commissions earned or due and payable in respect of Gold and/or Rise terminated upon Gold's death.

72. Lincoln's position is improper, in material breach of its obligations.

73. Lincoln has caused Wife to suffer past and ongoing damages.

WHEREFORE, Plaintiffs Rise, the Estate and Wife (Steffi B. Gold), respectfully request that the Court enter judgment in their favor and against the Defendants Lincoln National Life Insurance Company and Lincoln Financial Advisors Corporation, for past and ongoing damages, plus interest and costs, order Lincoln to abide by the Broker Contracts going forward (or otherwise pay the obligations thereunder), and award all other relief that the Court may deem to be appropriate.

## COUNT IV – DECLARATORY RELIEF
## RISE, ESTATE AND WIFE V. LINCOLN

74. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

75. As set forth fully above, pursuant to the Broker Contracts, Wife has rights and standing to receive commissions from Lincoln.

76. As set forth fully above, Wife, the surviving spouse of Gold, is entitled to payment of commissions by and from Lincoln under the Broker Contracts, including future commissions due and payable by Lincoln with respect to commissions earned by Gold and/or Rise during Gold's lifetime and/or for which Gold and/or Rise had or has a vested interest.

77. Lincoln is in breach of its duties under the Broker Contracts because Lincoln has failed to make any such payments to Wife.

78. Lincoln has wrongly declared that all rights to any commissions earned or due and payable in respect of Gold/Rise terminated upon Gold's death.

204733086

79. Lincoln's position is improper, in breach of its obligations and has caused Wife past and ongoing damages.

80. Rise, the Estate and Wife, therefore, seek declaratory relief in the form of an order of Court declaring that Wife is entitled to payment of commissions by and from Lincoln under the Broker Contracts, including future commissions due and payable by Lincoln with respect to commissions earned by Gold and/or Rise during Gold's lifetime and/or for which Gold and/or Rise had or has a vested interest.

81. In the absence of declaratory relief, Wife will be irreparably harmed. The interests of justice and equity further mandate that declaratory relief be awarded.

82. An actual and justifiable controversy exists between Rise, the Estate and Wife, on the one hand, and Lincoln, on the other hand, over the contractual rights to commissions.

WHEREFORE, Plaintiffs Rise, the Estate and Wife (Steffi B. Gold) respectfully request that this Court enter judgment in their favor and against Defendants Lincoln National Life Insurance Company and Lincoln Financial Advisors Corporation and enter declaratory relief that Wife is entitled to payment of commissions by and from Lincoln under the Broker Contracts, including future commissions due and payable by Lincoln with respect to commissions earned by Gold and/or Rise during Gold's lifetime and/or for which Gold and/or Rise had a vested interest, all at Lincoln's cost.

## COUNT V – TORTIOUS INTERFERENCE
### RISE, ESTATE AND WIFE v. SILVER AND CAPITAL

83. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

84. By and through Silver's conduct described fully above, acting on behalf of himself and Capital, Silver intentionally induced Lincoln to breach the Broker Contracts and/or otherwise fail to meet its contractual obligations to Rise, the Estate and/or Wife.

85. No privilege or justification exists for such intentional interference.

86. Defendants Silver and Capital acted intentionally, willfully, maliciously and with reckless indifference to the rights of Rise, the Estate and/or Wife when they induced Lincoln to breach the Broker Contracts and breach Lincoln's obligations to Rise, the Estate and/or Wife. Such conduct was outrageous.

87. As a result of Defendant Silver's and Capital's intentional interference with the Broker Agreements and the legal rights of Rise, the Estate and/or Wife -- Rise, the Estate and/or Wife have suffered, and will continue to suffer, damages.

88. Defendants Silver's and Capital's intentional interference was willful and malicious, warranting an award of punitive damages.

WHEREFORE, Rise, the Estate and Wife, respectfully request that the Court enter judgment in their favor and against the Defendants Silver and Capital, plus interest, costs, punitive damages and all other relief that the Court may deem to be appropriate.

### COUNT VI – TORTIOUS INTERFERENCE
### ESTATE AND RISE v. LINCOLN

89. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

90. By and through Lincoln's conduct described fully above, Lincoln intentionally induced Silver/Capital to breach the Agreement and/or otherwise fail to meet Silver/Capital's contractual obligations to the Estate and/or Rise pursuant to the Agreement.

91. No privilege or justification exists for such intentional interference.

204733086

92. Defendants Lincoln acted intentionally, willfully, maliciously and with reckless indifference to the rights of the Estate and/or Rise when they induced Silver/Capital to breach the Agreement and breach Silver/Capital's obligations to the Estate and/or Rise. Such conduct was outrageous.

93. As a result of Defendants Lincoln's intentional interference with the Contract and the legal rights of the Estate and/or Rise -- the Estate and/or Rise have suffered, and will continue to suffer, damages.

94. Defendants Lincoln's intentional interference was willful and malicious, warranting an award of punitive damages.

WHEREFORE, the Estate and Rise, respectfully request that the Court enter judgment in their favor and against the Defendants Lincoln, plus interest, costs, punitive damages and all other relief that the Court may deem to be appropriate.

### COUNT VII – DEMAND FOR AN ACCOUNTING
### PLAINTIFFS V. DEFENDANTS

95. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

96. Plaintiffs are entitled to and seek a court-ordered accounting from Defendants, conducted by an independent competent professional, given the above-described contractual relationships between the parties and breaches of the duties and payments owed to Plaintiffs.

97. Specifically, Plaintiffs are entitled to and seek a full accounting of (i) any and all payments made since the date of Gold's death by Lincoln to Silver and/or Capital, including the date and amount of any payment; (ii) the basis for any such payment; (iii) the methodology for the calculation of any such payment; and (iv) the nature and amount of any and all vested

interests or rights held by Gold, Rise, the Estate, Wife, Silver and/or Capital in respect of the Products, any shared clients and/or Lincoln.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and order Defendants to a strict accounting as set forth above, all at Defendants' cost.

### COUNT VIII – UNJUST ENRICHMENT
### RISE v. SILVER AND CAPITAL

98. The averments contained in the preceding paragraphs are incorporated herein by reference as if set forth in full.

99. In the alternative, in reliance upon the Agreement, Rise has paid certain expenses (discussed *supra*) for the benefit of Silver/Capital, conferring a benefit upon Silver/Capital.

100. Rise paid such expenses with the expectation that the Agreement would be fulfilled and/or complied with by Silver/Capital. However, Silver/Capital has failed to comply with and/or meet the obligations and duties owed under the Agreement to Rise and otherwise, as aforesaid.

101. Silver/Capital received and accepted the benefit of the expenses paid by Rise, without reimbursement to Rise.

102. Silver/Capital's receipt and acceptance of the expenses paid by Rise, without reimbursement to Rise, is wrongful, unfair and unjust.

103. For these reasons, Rise has been damaged by Silver/Capital's unjust enrichment.

WHEREFORE, Rise respectfully requests that the Court enter judgment in its favor and against the Defendants Silver and Capital, plus interest, costs, punitive damages and all other relief that the Court may deem to be appropriate.

204733086

## JURY TRIAL DEMANDED

Plaintiffs hereby request a trial by jury on a counts on which a right to a jury exists.

                                                  Respectfully submitted,

                                                  CLARK HILL, PLC

Dated: February 16, 2017          By:   */s/ Lauren D. Rushak*
                                                         Lauren D. Rushak, Esquire
                                                         Pa. I.D. No. 83728

                                                         Jerri A. Ryan, Esquire
                                                         Pa. I.D. No. 80039

                                                         Firm I.D. No. 282
                                                         One Oxford Centre
                                                         301 Grant Street, 14th Floor
                                                         Pittsburgh, PA 15219
                                                         Telephone: (412) 394-7711
                                                         Fax: (412) 394-2555
                                                         *Counsel for Plaintiffs*

204733086